JACK GHO, (A CHINAMAN) vs. CHARLEY JULLES, (AN INDIAN.)

An Indian, sustaining tribal relations, is as capable of entering into binding contracts, as any other alien, except in the particular instance, prohibited by Section 3, act of Congress, March 3, 1847.

The right to contract, necessarily draws after it the liability to be sued.

Error to the Third Judicial District.

*Merrick, McFadden* and *Theobalds*, for Plaintiff in Error.

*McNaught* and *Leary* for defendant in Error.

Opinion rendered by GREENE, Associate Justice.

Jack Gho, a Chinaman, for money to be paid, was hired by Charley Julles, an Indian logger, to work as cook in the latter's logging camp. The cook-work has been performed, and in part paid for, as agreed, but the Chinaman, claiming that he has not received all his hire, sues the Indian in the Court below, to recover an alleged balance due. The suit results in a verdict and judgment for Gho, the appellee.

The defeated Indian appeals to us, saying that, because he is an Indian, of the Snohomish tribe in this Territory, and has

never severed his tribal relations, and because the contract on which the action against him is based is executory as to him, the Court has exceeded its jurisdiction, and had no power to entertain the suit.

There might be a question, whether the fact of the political condition of the appellant, relied on by him to show lack of jurisdiction, so appears in the record before us, as to enable him to take the advantage of it he claims; but as the appellee, as well as the appellant, in argument concedes that it does, we also will take its appearance for granted, and proceed briefly to state our conclusions upon the case as presented:

The agreement set out in the pleadings, and proved on the trial, was plainly, at the beginning, on both parts an executory contract. As to the Chinaman's part, it may now be regarded executed; but the very foundation of the suit is, that it has not become executed fully, as to the part which the Indian was by its terms to execute. Until the latter shall have performed all his part of it, it remains for him, as to the unperformed part, unexecuted and executory. Its validity, as to the part remaining unexecuted, depends upon the Indian's power to bind himself originally by the executory contract.

Assuming, then, that Charley Julles is an Indian, sustaining tribal relations with an Indian tribe within the United States, and taking his contract to be, as we have seen it is, executory in its nature, the only questions to be determined seem to be: First, could he, an Indian so related, make such a contract? and second, the contract being good, could the court below entertain a suit upon it against him?

As to the first question, we are of opinion that the appellant could bind himself by such a contract, as to money which was actually in his possession, or which might come to him as the fruit of his business. As an Indian of a domestic tribe, he was an alien; but to our mind, no more disabled from making executory contracts of that sort, than any other alien. Nor are we aware of any principle or declaration of law, which would distinguish between the appellant and any other alien in his ability to make the particular contract in question. He had

the same right and power to contract with the appellee, as the appellee had to contract with him. Money and all other personal property, which he certainly had the right to get and hold, he had also the right to use immediately, and to promise in advance, in all proper ways, in pursuit of his happiness.

This freedom, so plainly excellent and desirable, he presents here the singular spectacle of disclaiming. In order to escape the fullfillment of his executory contract, he contends that he is disabled from being a party to such a contract, by the third section of an act of Congress, approved March 3, 1847, which concludes in these words:

"And all executory contracts made and entered into by any Indian for the payment of money or goods, shall be deemed and held to be null and void, and of no binding effect whatsoever." 9 Stat., 203.

Looking back over the whole section, which is a long one, we find, however, that it is a connected piece of legislation, relative to the payment and application of money and goods to Indians pursuant to treaty, and designed to guard against such payment being other than actual and beneficial. The whole purview of the section is, to promote the happiness and prosperity of the Indians, by preventing the diversion of the money or goods from proper usefulness, in frivolous or anticipatory expenditure. The concluding words, so much relied on, recognize the right of Indians to make executory contracts regarding money and goods except as expressly there inhibited, and expressly inhibit all executory contracts respecting money or goods to be paid or furnished by the United States to any Indian tribe pursuant to treaty stipulation.

This law, intended to fulfill a specific, plain, and beneficent purpose, is not to be perverted to work the Indian disadvantage. The ability to make executory contracts is essential to the maintenance and progress of industry and civilization. Engagements of future performance and of future payment, every business man finds an every day necessity. Does this law intend that the Indian, the moment he attempts to enter upon the pursuits that occupy the attention of our race, shall be

stopped on the threshold, the door shut in his face? Is he to be walled up in barbarism? Is an insuperable obstacle to be thrust between him and all advance? And this by the government which pretends to treat him as a ward? by a statute, which in all particulars else, breathes the kindliest care for his best interests? Deprive a race of the use of their right hands, and you do not give to every branch of industry a more tremendous check, to a barbarous race you do not oppose a more hopeless barrier to civilization, than when you take away the power to contract for the future. And even to forbid Indians to make executory contracts for money and goods only, would be a derogation from natural right most hampering and injurious.

Congress intended this statute to operate as a help and not as a hindrance; and we cannot, for the sake of special relief to an individual, place on it such a construction as would make it work grievous and general injury.

The opinion of Attorney-General Cushing, cited by appellant, respecting this section (6 Opin., 49), was not given on the question before us. The point presented him for decision was, whether the statute, which in terms applies to contracts with individual Indians only, respecting money and goods to be supplied under treaty, was to be enlarged by construction so as to apply to contracts respecting like subject matter with nations or tribes.

The Attorney-General favored a strict construction of the law. And the truth is, it ought to be strictly construed. We also so construe it. For with such a law, to construe it strictly is the most liberal and beneficent construction.

The authorities cited from New York and United States reports hardly touch the case. They indeed distinctly define Indian tribes to be alien communities. But they do not decide that an Indian of a tribe can or cannot make a binding contract regarding money or goods, or estates in land not heritable. We are unable to see why an Indian alien, preserving his tribal relations is not as capable of making a binding contract (other than such as we have defined to be void by Statute), as an Englishman, or a Spaniard, or a Dane, who while still retaining his native allegience makes contracts here.

As to the second question in the case, whether the contract being valid, the Court below could entertain a suit upon it, we are resolved in favor of the jurisdiction of the Court. The right to contract draws after it, necessarily, the right and liability to be sued.

Let the judgment of the Court below be affirmed.